UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

**ANGELA IVIE**                                                                        **PLAINTIFF**

**V.**                             **CASE NO. 1:19-CV-42-BD**

**ANDREW SAUL,**
**Commissioner of Social Security Administration**[1]                    **DEFENDANT**

## ORDER

**I.   Introduction:**

On February 27, 2017, Angela Ivie applied for disability benefits, alleging disability beginning on April 7, 2016. (Tr. at 10) Ms. Ivie's claims were denied initially and upon reconsideration. *Id.* After conducting a hearing, the Administrative Law Judge (ALJ) denied the application. (Tr. at 21) Ms. Ivie requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1) Therefore, the ALJ's decision stands as the final decision of the Commissioner. Ms. Ivie filed this case seeking judicial review of the decision denying his benefits.

**II.   The Commissioner's Decision:**

The ALJ found that Ms. Ivie had not engaged in substantial gainful activity since the alleged onset date of April 7, 2016. (Tr. at 13) At step two of the five-step analysis,

---

[1] On June 6, 2019, Andrew Saul became Commissioner of the Social Security Administration. He is substituted, therefore, as the Defendant. Fed. R. Civ. P. 25(d)

the ALJ found that Ms. Ivie had the following severe impairments: hiatal hernia and esophageal stricture secondary to lap band slippage; posttraumatic stress disorder; depressive disorder; and attention deficit hyperactivity disorder. *Id*.

After finding that Ms. Ivie's impairments did not meet or equal a listed impairment (Tr. at 13), the ALJ determined that Ms. Ivie had the residual functional capacity (RFC) to perform work at the light level with limitations. (Tr. at 15) She was limited to only occasionally climbing stairs and to never climbing ladders. *Id*. She retained the capacity to perform simple, routine, and repetitive tasks. *Id*. She could make simple work-related decisions. *Id*. She could maintain concentration, persistence, and pace with normal breaks. *Id*. She could work where interpersonal contact is incidental, and with supervision that is simple, direct, and concrete. *Id*.

The ALJ found, based on Ms. Ivie's RFC, that she was unable to perform any past relevant work (Tr. at 19) At step five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find, based on Ms. Ivie's age, education, work experience and RFC, that she was capable of performing work in the national economy as housekeeper and price tag ticketer. (Tr. at 20) Thus, the ALJ determined that Ms. Ivie was not disabled. *Id.*

### III. Discussion:

#### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and assure that the decision is supported by substantial evidence on the record as a whole.

*Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (*citing Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). Stated another way, the decision must rest on enough evidence that "a reasonable mind would find it adequate to support [the Commissioner's] conclusion." *Halverson*, 600 F.3d at 929. The Court will not reverse the decision, however, solely because there is evidence to support a conclusion different from that reached by the Commissioner. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

B. Ms. Ivie's Arguments on Appeal

Ms. Ivie maintains that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She asserts that: (1) the ALJ erred at step two in her determination that Ms. Ivie's lower leg conditions were non-severe; (2) the ALJ failed to fully develop the record; (3) the ALJ did not properly evaluate the medical opinions; and (4) the assigned RFC and the hypothetical posed to the VE did not fully incorporate Ms. Ivie's limitations.

Ms. Ivie suffered from edema, venous stasis dermatitis, and skin lesions on her legs. (The record includes some evidence about the severity of these conditions from before the relevant time-period). In 2017, Dr. Seth Barnes, M.D., Ms. Ivie's primary care physician, noted swelling and discomfort in Ms. Ivie's legs and suggested that she apply for disability, while encouraging her to elevate her legs as needed. (Tr. at 553-555, 576-585, 800-803, 1354-1365). Dr. Barnes also treated Ms. Ivie for radiating back pain and recommended that she avoid heavy exertion and treat her pain with heat and ice and

gentle exercises. *Id*. The need for only conservative treatment contradicts allegations of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

Ms. Ivie's condition improved over the relevant time-period. At a February 2018 visit with Dr. Barnes, she had no complaints, and had no skin lesions, ulcerations, or rashes. (Tr. at 1367-1370) She had lost weight by walking up to three miles a day and avoiding carbohydrates. (Tr. at 1378-1383) She had a normal gait and no joint tenderness or back pain. (Tr. at 1367-1370) Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Ms. Ivie had stopped taking pain medications and stated at the hearing that she was taking only ibuprofen for pain. *Id*; (Tr. at 38-43) Dr. Barnes observed that Ms. Ivie experienced fatigue secondary to depression but that she also demonstrated appropriate affect and good insight and judgment. *Id*. Mental status examination was grossly normal. *Id.*

Ms. Ivie saw Dr. Melissa Powell, M.D., a psychiatrist, several times in 2018. At a May 2018 visit, Ms. Ivie reported she was fatigued and had trouble concentrating but that she was otherwise "pretty good." (Tr. at 1382-1387) She had an entirely normal mental status exam with no mania or psychosis, and no side effects from her psychiatric medications. *Id*.

Ms. Ivie was a long-time nurse who was fired for stealing mediations from the hospital where she worked in 2016; she had a narcotics dependency that was in remission towards the end of the relevant time period. *Id*. Ms. Ivie told Dr. Powell in May of 2018

that she was sober and attending two Narcotics Anonymous meetings per month. *Id*. She was awaiting approval from the Nursing Board to return to her nursing career and was happy about this development, because her depression was linked to her inability to work as a nurse. *Id*. Ms. Ivie reported to Dr. Powell that exercise helped her mood and that she had learned coping skills in therapy that mitigated her PTSD symptoms. *Id*. Dr. Powell was pleased with Ms. Ivie's progress and told her to call the clinic as needed for further treatment. *Id*.

In 2017, Dr. Kenneth Hobby, Ph.D., performed a mental consultative examination on Ms. Ivie. (Tr. at 741-754). He found that Ms. Ivie had normal thought process and thought content, intact orientation, and adequate memory and concentration. *Id*. Dr. Hobby noted that Ms. Ivie could shop in stores, drive unfamiliar routes, handle change and balance a checkbook, and attend to personal care.[2] *Id*. Based on his mental functional capacity examination, Dr. Hobby determined that Ms. Ivie could understand and respond to normal instructions and interact with others in a socially appropriate manner. *Id*. He said she would have some limitations in attending and sustaining concentration for work tasks and could not persist at a skilled level of work for a whole 8-hour workday, but he opined that she would be able to complete tasks that did not have strict time limits. *Id*.

---

[2] Ms. Ivie also testified that she could play games on her phone, go to church, and eat out with her husband regularly. (Tr. at 13-17)

The ALJ gave partial weight to Dr. Hobby's opinion, observing that Dr. Hobby did not have the benefit of reviewing all of Ms. Ivie's treatment records. (Tr. at 19) The ALJ analyzed the state-agency mental health expert opinions that Ms. Ivie was capable of light exertional, unskilled work, along with Dr. Hobby's opinion. Based on all of these considerations, the ALJ limited Ms. Ivie to unskilled work. (Tr. at 15) This was consistent with Ms. Ivie's mild mental health symptomology and her improvement toward the end of the relevant time-period. (Tr. at 60-85).

Ms. Ivie contends that, because the ALJ did not mention Dr. Barnes at all in her opinion, her decision was defective. As demonstrated above, however, Dr. Barnes observed very few problems in either physical or mental areas by February 2018. In any event, there is no requirement that an RFC finding be supported by a specific medical opinion. *See Hensley v. Colvin,* 829 F.3d 926, 932 (8th Cir. 2016). Even though Dr. Barnes's opined that Ms. Ivie had severe lower extremity problems early in the relevant time period, Ms. Ivie's improvement over time renders the earlier opinion from Dr. Barnes unpersuasive. In her appeal brief, Ms. Ivie relies on Dr. Barnes's August 2017 recommendation that she should pursue disability benefits; but, that opinion was outdated by 2018, and the ALJ was not required to discuss it. Ms. Ivie had improved range of motion, normal gait and station, and exhibited the ability to walk 3 miles in 2018, so her arguments that: (1) Dr. Barnes's opinions should have been given more weight; and (2) lower extremity problems should have been found to be severe at step two, fail.

Moreover, the ALJ based her decision on a fully developed record. An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). It is well settled that a claimant has the burden of proving her disability; the ALJ does not have to function as counsel for the claimant. *Id*. The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011).

The record was not in conflict. Ms. Ivie's conditions improved. The 2018 treatment notes from Dr. Powell and Dr. Barnes provided support for the ALJ's decision, and she was not required to order any additional consultative examinations.

Finally, Ms. Ivie asserts that the ALJ should have included more restrictive limitations in concentration, persistence, and pace in the assigned RFC and the hypothetical to the VE. She contends that a limitation to simple work is "boilerplate language," inadequate for someone with her mental limitations. First, Ms. Ivie's attorney did not inquire about limitations in concentration, persistence, and pace at the hearing, when the ALJ gave him the opportunity. Second, the record has not shown more than moderate limitations in these areas (at step three, the ALJ assessed moderate limitations in those areas). (Tr. at 14) Ms. Ivie could perform a variety of daily activities requiring at least moderate concentration, persistence, and pace (including working part-time as a cashier for five months during the relevant time-period). (Tr. at 13) Third, while the ALJ

did not specifically use the words "concentration, persistence, and pace" in the hypothetical posed to the VE, the Eighth Circuit does not require that language, verbatim, in cases like these. *See Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (moderate difficulties in concentration, persistence, and pace are consistent with being able to understand, remember, and carry out simple instructions while performing non-detailed tasks).

The ALJ's assigned RFC *did* limit Ms. Ivie with respect to concentration, persistence and pace, based upon the report of Dr. Hobby and the balance of the medical evidence. The RFC provided for simple, routine, and repetitive works, with incidental interpersonal contact and supervision that is simple, direct, and concrete. (Tr. at 15); *See Gray v. Colvin*, No. 4:14-CV-00815 (E.D. Mo. Sept. 28, 2015)(holding that RFC that limited the claimant to unskilled work appropriately accounted for limitation in concentration, persistence, and pace based on the ALJ's review of medical record, evaluation of subjective complaints). The ALJ carried her burden at step five.[3]

## IV.  Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly considered Ms. Ivie's impairments at step two, she properly evaluated the medical opinions, and neither the RFC nor the hypothetical posed to the VE

---

[3] Ms. Ivie also contended that the ALJ failed, at step five, to account for her need to elevate her legs. Ms. Ivie said she could walk for three miles per day in 2018, so this contention does not persuade the Court.

were defective. The finding that Ms. Ivie was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is, AFFIRMED. The case is dismissed, with prejudice.

IT IS SO ORDERED this 22nd day of July, 2020.

_____
UNITED STATES MAGISTRATE JUDGE